UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CR424-046 |
| | ) | |
| LANCASTER GRAHAM, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Defendant Lancaster Graham is indicted on one count of attempted enticement and inducement of a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b). *See* doc. 1. He has filed a motion to suppress statements he made to law enforcement officers. *See* doc. 34. The Government opposed. Doc. 39. On January 3, 2025, the Court held a hearing on his Motion. *See* doc. 42 (Minute Entry). His Motion is, therefore, ripe for disposition. For the reasons explained below, it should be **DENIED**. Doc. 34.

The facts underlying Graham's Motion are straightforward and undisputed. He was arrested on April 14, 2024 as part of an undercover operation attempting to identify "persons believed to be interested in enticing minors for the purpose of sexual conduct." Doc. 34 at 1. As

1

Defendant summarizes, the operation involved an agent who represented herself online and in phone calls as a fourteen-year-old. *Id.* The precise circumstances of Graham's arrest, however, are not directly relevant to his Motion. After his arrest he was transported "to a law enforcement building," where he was interviewed. *See* doc. 39 at 5. At that location, two officers attempted to interview him. A video recording of their interactions was admitted at the January 3 hearing, *see* doc. 42-1 at 1, and one of the interviewing officers, Savannah, Georgia Police Department Investigator Jessica McCooley testified, *see* doc. 42 at 1.

Graham's Motion seeks to suppress statements he made during the interview because he contends he made those statements without knowingly and voluntarily waiving his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). *See* doc. 34 at 1. He argues that he "repeatedly informed the agents that he did not understand his Miranda Rights . . .," and refused to acknowledge that he was willing to waive them and speak to the agents, but "the agents continued to have discussions with Graham in attempt to get him to sign a written waiver or at least orally waive his rights . . . ." *Id.* at 1-2. The Government's response notes that Graham's argument for suppression is "brief," and lacks detailed legal analysis.

2

Doc. 39 at 6.  The Government points out that "Graham was provided with *Miranda* warnings[ ] and was very well aware of what protections they afforded him." *Id.*  The Government's more specific arguments are discussed in more detail below.

"The Fifth Amendment provides to every person a right against self-incrimination, U.S. Const. amend. V, and, correspondingly, requires that trial courts exclude from evidence any incriminating statements an individual makes before being warned of his rights to remain silent and to obtain counsel." *United States v. Luna-Encinas*, 603 F.3d 876, 880 (11th Cir. 2010); *see also, e.g., United States v. Woodson*, 30 F.4th 1295, 1303 (11th Cir. 2022).  Entitlement to *Miranda* warnings attaches "when custodial interrogation begins." *Luna-Encinas*, 603 F.3d at 880 (quoting *United States v. Acosta*, 363 F.3d 1141, 1148 (11th Cir. 2004)) (quotation marks omitted).  The Government concedes that Graham was in *Miranda* custody during the entirety of the recorded interview.  *See* doc. 39 at 6.

The Supreme Court has explained that "the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980).  "[T]he term 'interrogation' under *Miranda*

refers not only to express questioning, but also to any words or actions on the part of the police (*other than those normally attendant to arrest and custody*) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301 (emphasis added); *see also id.* at 300 (" 'Interrogation,' as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself."). "A district court need not suppress spontaneous remarks which are not the product of 'interrogation.'" *United States v. Hall*, 716 F.2d 826, 830 (11th Cir. 1983). Defendant bears the burden of showing that his statements were the result of interrogation. *See, e.g., United States v. Peck*, 17 F. Supp. 3d 1345, 1354 (N.D. Ga. 2014) (noting that courts "have assigned the burden of proof to the defendant seeking to challenge the admissibility of statements in the absence of a formal arrest," and collecting cases); *see also, e.g., United States v. Chaidez-Reyes*, 996 F. Supp. 2d 1321, 1345 n. 23 (N.D. Ga. Feb. 10, 2014) ("[T]he defendant bears the burden of establishing that he was in custody and that his statements were made in response to government questioning.").

Statements made during a custodial interrogation are inadmissible unless the Government establishes that the defendant "in fact knowingly and voluntarily waived [his] *Miranda* rights when making the statement." *Berghuis v. Thompkins*, 560 U.S. 370, 382 (2010) (internal quotation marks, alteration, and citation omitted). "The waiver inquiry has two distinct dimensions: waiver must be voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception, and made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* at 382-83 (internal quotation marks and citation omitted); *see also, e.g., Moran v. Burbine*, 475 U.S. 412, 421 (1986) (same). However, the Supreme Court has clarified that "coercion," in this context does not exist "whenever the defendant feels compelled to waive his rights by reason of any compulsion, even if [it] does not flow from the police." *Colorado v. Connelly*, 479 U.S. 157, 170 (1986). "*Miranda* protects defendants against government coercion leading them to surrender rights protected by the Fifth Amendment; it goes no further than that." *Id.*

5

Finally, if a suspect in custody invokes his *Miranda* rights, questioning must cease. *See, e.g., Miranda*, 384 U.S. at 474. However, "[t]he government has no duty to cease interrogating a suspect where the suspect's invocation of his *Miranda* rights is equivocal." *United States v. Dowd*, 451 F.3d 1244, 1250 (quoting *United States v. Acosta*, 363 F.3d 1141, 1152 (11th Cir. 2004)) (internal quotation marks and alterations omitted); *see also, e.g., Berghuis*, 560 U.S. at 381-82 (explaining that standard, which requires "unequivocal" and "unambiguous" invocation, is the same for *Miranda* right to counsel and right to remain silent). "The inquiry as to whether a suspect's invocation of his [*Miranda*] right[s] . . . was ambiguous or equivocal is an objective one." *Medina v. Singletary*, 59 F.3d 1095, 1101 (11th Cir. 1995). "A suspect must articulate his desire to cut off questioning with sufficient clarity that a reasonable police officer in the circumstances would understand the statement to be an assertion of the right . . . ." *Id.* (internal quotation marks and citation omitted). A defendant bears the burden of proving that he invoked his rights. *See United States v. Chan,* 2015 WL 13736217, at *8 (N.D. Ga. Nov. 17, 2015) (noting no Eleventh Circuit authority, but "other courts have placed the burden on the defendant to demonstrate he clearly

6

invoked," his *Miranda* rights (citing *United States v. Schlansky*, 709 F.2d 1079, 1084 (6th Cir. 1983)); *see also, e.g., United States v. Green*, 2022 WL 574864, at *7 (W.D. Pa. Feb. 25, 2022) ("The burden of persuasion on the discrete issue of whether defendant clearly invoked his *Miranda* rights is on the defendant." (citations omitted)).

It is clear from the video recording of Graham's interview that Investigator McCooley read him his *Miranda* rights almost immediately. Several questions that precede her recitation of his rights—including his name, date of birth, address, phone number, eye color, weight, height, and his Social Security Number—clearly fall within the "booking question" exception to *Miranda*. *See, e.g., Pennsylvania v. Muniz*, 496 U.S. 582, 601-02 (1990) (responses to questions including "name, address, height, weight, eye color, date of birth, and current age," were admissible, despite being "interrogation," as they were "within a 'routine booking question' exception"). The other questions McCooley asked before reading Graham's rights—whether he could speak and understand English, whether he was under the influence of any intoxicant, and whether he suffered from any "mental conditions"—are not clearly "booking questions," but are also not clearly *Miranda* interrogation. To

7

the extent that Defendant argues that his responses to those questions should be suppressed, he has not borne his burden of showing that any of those statements were the result of interrogation.

Once Graham was read his *Miranda* rights, the question becomes whether he waived them or whether any of the statements he made fall into an exception to *Miranda*. However, unlike other showings relevant to *Miranda*, the Government bears the burden of showing waiver or the application of an exception. *See United States v. Lall*, 607 F.3d 1277, 1282 (11th Cir. 2010); *Chaidez-Reyes*, 996 F. Supp. 2d at 1345. The Government's opposition to Graham's Motion hedges its argument somewhat, apparently due to his argument's lack of detail. *See, e.g.,* doc. 39 at 9 ("Graham's statements were either not subject to interrogation and/or obtained after he was provided with the appropriate warnings which he clearly understood."). Since the Court should conclude that the Government has proven, by a preponderance of the evidence, that Graham implicitly waived his *Miranda* rights, the question of whether any of his statements were the product of interrogation is moot.

To the extent that the Government appears to argue that Graham's merely making voluntary statements after he is read his *Miranda* rights

8

constitutes waiver, it is mistaken. The Supreme Court has expressly held that the prosecution's establishing "that a *Miranda* warning was given and the accused made an uncoerced statement . . . standing alone, is insufficient to demonstrate a valid waiver of *Miranda* rights." *Berghuis*, 560 U.S. at 384 (internal quotations omitted). However, the video recording shows that there are indicia that Graham understood his rights, beyond the fact of his voluntary statements. As discussed below, those indicia are sufficient, if not overwhelmingly so, to satisfy the Government's burden. *Cf. United States v. Roberson*, 573 F. Supp. 3d 209, 240 (D.D.C. 2021) ("The prosecution must show that, in the totality of the circumstances, it is even slightly more likely than not that [the suspect] understood his rights when he waived them.").

"Waiver [of *Miranda* rights] may be explicit or implicit, and a voluntary statement after hearing and understanding one's *Miranda* rights constitutes a course of conduct indicating waiver sufficient to render subsequent statements admissible." *Roberson*, 573 F. Supp. 3d at 237 (quoting *Berghuis*, 560 U.S. at 386) (internal quotation marks omitted). There is no indication that Graham's statements implying his waiver were, in any way, involuntary in the sense that they were the

9

product of "intimidation, coercion or deception."[1] *Connelly*, 479 U.S. at 170. The Court's focus, therefore, is on the evidence concerning Graham's understanding of his rights. The Court will begin by discussing the evidence positively indicating Graham's understanding and will then proceed to address the counterbalancing evidence that he identifies.

"First, and most obviously, [Graham] is a native English-speaker, and, based on the Court's review of the interview[ ] at issue, he exhibits no defects in understanding or responding in his native language." *Roberson*, 573 F. Supp. 3d at 240. Second, Graham repeatedly makes apparent references to *Miranda* rights that indicate his understanding.[2]

---

[1] Graham's Motion does not challenge the voluntariness of his statements. *See generally* doc. 34. *Cf. Jackson v. Denno*, 378 U.S. 368, 376 (1964). Even if it did, the voluntariness inquiry is focused on law enforcement conduct. *See, e.g., United States v. Thompson*, 422 F.3d 1285, 1296 (11th Cir. 2005) ("Government coercion is a necessary predicate to a finding of involuntariness under the Fifth Amendment."). The video recording establishes that the agents took no action even approaching "coercive conduct," in the relevant sense. *See id.* at 1295-96 ("Sufficiently coercive conduct normally involves subjecting the accused to an exhaustingly long interrogation, the application of physical force or the threat to do so, or the making of a promise that induces a confession." (internal quotation marks and citation omitted)).

[2] Graham first states that he "knows [his] rights," and that he is not obligated to speak to the officers, in response to Investigator McCooley's identification questions. After McCooley reads him his rights, he immediately asks whether the officers who seized him were not "supposed to do that." That question also suggests that he understands his rights. After the officers make additional requests that Graham acknowledge his understanding, he asks whether he is being "detained" or "arrested," and is told he is "not free to go." He then states that, since he is not under arrest, he does not have to "answer any questions." One of the officers points out that he is not

Third, when, after already having read his rights, McCooley summarizes them again, Graham nods. *See, e.g., id.* at 240-41 (discussing the significance of a suspect's nod in response to a statement of his rights). Fourth, when the officers repeat their request that Graham acknowledge that he understands the rights that have been read to him, he responds "I do have this to say . . .," and proceeds to imply that he is willing to provide information about third parties' criminal activity. His implicit *quid pro quo* offer suggests that he understands he might refuse to speak at all. Fifth, when McCooley asks whether Graham needs further explanation of his rights, he indicates that he "understands," although he states that he "understands he is under arrest." He had previously noted that he understood certain rights accrued at arrest. Sixth, when, in response to Graham's discussion of his work at a local hospital, officers ask which hospital, he refuses to answer, which indicates that he understands he can refuse. Finally, when one of the officers states that the interview will be terminated because Graham has mentioned his lawyer, Graham responds "Y'all fine." Then, when the officer noted that

---

required to answer questions, whether or not he is under arrest. The implication is that he understands that there is a connection between "arrest" and his ability to refuse to answer questions.

11

Graham "didn't want to talk to us," Graham responds, "It's not that." Graham then expressly disclaims any request for a lawyer, stating: "I never asked for a lawyer, not one time." In an attempt to clarify his statements, McCooley asks "Is it ok to continue to speak with you?" and Graham responds "Y'all can do whatever y'all please." When she again asks "So, we're good to keep talking?" Graham nods. Although none of those circumstances, standing alone, might show Graham's understanding, they have a significant collective force.

The strongest countervailing evidence that Graham did not understand his right is his refusal to affirmatively acknowledge that he did understand them. As noted above, it is clear that a suspect may waive his *Miranda* rights without any explicit acknowledgement. *See, e.g., Hall v. Thomas*, 611 F.3d 1259, 1285 (11th Cir. 2010) ("The prosecution does not need to show that a waiver of *Miranda* rights was express, and an implicit waiver of the *Miranda* rights is sufficient." (internal quotation marks and citation omitted)). It, therefore, stands to reason that Graham's refusal to explicitly acknowledge his rights is of limited significance. At the hearing, Defendant placed considerable emphasis on Graham's statements concerning his understanding in response to

12

officers' questions about his rights. However, as discussed below, those statements, taken in context, provide only limited evidence concerning his understanding of his rights.

Graham first states that he does not "understand" after McCooley finishes reading his rights, collecting the "booking information" discussed above, and discussing his mental health. He asserts that his rights were violated by the circumstances of his initial seizure, particularly the force deployed and that fact that his car window was broken in the process. His follow-up question about whether he is "detained" or "arrested," if anything implies that he understands the rights McCooley has read to him. When McCooley subsequently asks whether he understands his rights, he responds "partially." However, he clarifies that what he only "partially" understands is the basis for his detention, not any of his rights. While Graham does refer to his lack of education, a general lack of education does not preclude a knowing waiver. *See, e.g., United States v. Beale*, 921 F.2d 1412, 1435 (11th Cir. 1991) (citing *United States v. Cox*, 509 F.2d 390 (D.C. Cir. 1974); *United States v. White*, 451 F.2d 696, 700 (5th Cir. 1971)); *United States v. Vaughn*, 2023 WL 4409541, at *9 (N.D. Ga. June 15, 2023) (finding "Defendant's statements about not

understanding 'what's going on' are about his generally not understanding why he was being arrested . . . and . . . not an indication that he did not understand," his *Miranda* rights). Graham never seeks clarification of any of his rights, despite repeated inquiries, and does not indicate what, in particular, he does not understand about the rights recited. His statements in the recording, therefore, provide limited evidence that he does not understand the rights that were clearly read to him.

Graham's disclosure of his use of psychoactive medication, consumption of alcohol, and mental health diagnoses could be relevant to whether any waiver of his *Miranda* rights was knowing and voluntary. However, neither intoxication nor mental impairment preclude a valid waiver. *See, e.g., See, e.g., United States v. Outland*, 73 F.4th 482, 487 (7th Cir. 2023) ("[N]either intoxication nor an impaired mental state necessarily renders a *Miranda* waiver invalid."). It is not enough to merely show the existence of some mental illness or intoxication, "[i]nstead the record must establish that, due to a mental disorder or some intoxicant, the defendant was *in fact* unable to comprehend and effectively waive his rights." *United States v. Quinones*, 2012 WL

2064705, at *3 (S.D. Ga. May 22, 2012). "Assessments of a defendant's coherence are regularly weighed in inquiries into the validity of *Miranda* waivers." *Outland*, 73 F.4th at 487-88 (citations omitted). Throughout the video recording, Graham appears coherent. He appears oriented and alert and responds appropriately, if not always directly, to the officers' questions. To the extent that his statements provide evidence of either consumption of intoxicants or mental impairment, they do not overcome the preponderance of the evidence that his implicit waiver was knowing and voluntary.

Graham also suggests that he invoked his rights, such that officers were obligated to terminate the interview. As discussed above, before officers are required to terminate an interview a suspect must invoke his rights unequivocally. Graham never does. He refers several times to being ready for officers to take him to jail, also holding his hands behind his back, apparently in order to be handcuffed. However, courts have held a suspect who said "take me to jail," was not unambiguously invoking his *Miranda* rights. *See United States v. Hicks*, 190 F. Supp. 3d 733, 747-48 (S.D. Ohio 2016). Graham's references to a lawyer were similarly ambiguous. The first reference to his lawyer appears to relate

15

to his intent to file a civil lawsuit based on the circumstances of his seizure. As discussed above, he subsequently affirmatively disavows any intention of requesting counsel. His references to counsel, therefore, do not constitute an unequivocal invocation of his right. *See, e.g., United States v. Canaday*, 2024 WL 2226984, at *29 (N.D. Ala. Feb. 27, 2024) (collecting cases). Graham has, therefore, not borne his burden to show that he unequivocally invoked his rights.

Accordingly, the Court should find that, (1) Graham's pre-*Miranda* statements were either "booking questions" or he has not borne his burden to show that they were made in response to any interrogation, (2) in the totality of the circumstances, the Government has proven by a preponderance of the evidence that Graham implicitly waived his *Miranda* rights, and (3) Graham has not borne his burden to show that he unequivocally invoked any of his rights, such that officers were required to terminate the interview. Thus, Graham's Motion to Suppress his statements should be **DENIED**. Doc. 34.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party

may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED,** this 28th day of January, 2025.

                                                        _____
                                                        CHRISTOPHER L. RAY
                                                        UNITED STATES MAGISTRATE JUDGE
                                                        SOUTHERN DISTRICT OF GEORGIA